# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

YOSEPH YADESSA KENNO

Plaintiff/Petitioner - Appellant,

   v.

**GOVERNOR'S OFFICE OF INFORMATION TECHNOLOGY ("GOIT"),**
**LYUBOV LOGACHEVA**, in her individual capacity,
**BOB MCINTYRE**, in his individual capacity,
**DON WILSON**, in his individual and official capacity,

Defendant/Respondent -   Appellee.

Case No. 21-1434

Appellant/Petitioner's Opening Brief

**APPELLANT/PETITIONER'S OPENING BRIEF**

## 1.  Statement of the Case.

When any litigant wins or defeats any lawsuit, before any court, it is paramount that they do so with integrity. In this case, however, when Defendants achieved their victory on ECF 101, they did so by withholding evidence of incalculable importance.

In two forums, the Colorado State Personnel Board and Federal District Court of Colorado, Defendants called upon Mr. Lilo Santos, Defendants' Director of Google Operation, as their witness, whose sworn affidavit claimed "Pursuant to a litigation hold issued on June 14, 2018, all of Yoseph Kenno's emails have been preserved in OIT's Google Vault." ECF 149, Exhibit 28, ¶¶ 3. The only problem: it was all based on evidence falsified by Mr. Santos himself. The evidence Mr. Santos falsified was willfully withheld by Defendants and their counsels during hearings in both forums.

## 2.  Statement of Facts Relevant to the Issues Presented for Review.

Defendants' motion for sanctions alleged that I had fabricated two emails concerning my HSA account and falsified an audio file. Defendants' motions also alleged that I planted the HSA emails into Defendants' Google Vault system using a fabricated domain. Defendants' allegation were all based on falsified evidence that had been withheld during trial.

**3.     Statement of Issues.**

    **a.     First Issue:** The district court failed to apply the correct standard of review on my motion pursuant to Fed.R.Civ.P. Rule 59 seeking the relief of a new trial.

    **Argument and Authorities:**

On my motion pursuant to rule 59, among the reliefs I sought was a new trial. ECF 148, at 19 ¶ 3, original rule 59 motion for a new trial. ECF 150, at 19 ¶ 5, from my amended rule 59 motion for a new trial. When the district court issued a decision on my rule 59 motion for a new trial, the district court did not apply any standard of review for rule 59(a) motions. ECF 168. The district court only applied the standard of review for rule 59(e) motions. Admitted, I should not have titled my rule 59 motion as a "motion for reconsideration." At the time, I didn't know a motion for reconsiderations only applies to rule 59(e). However, the law provides that a motion's title does not control how the Court construes it. See Livernois v. Med. Disposables, Inc., 837 F.2d 1018, 1020 (11th Cir. 1988) (nomenclature not controlling of interpretation of post-trial motion); see Aird v. United States, 339 F. Supp. 2d 1305, 1307 n.2 (S.D. Ala. 2004) (same). The relief sought — not a motion's title — determines how the Court should construe a motion. United States v. Wetzel-Sanders, 805 F.3d 1266, 1268 (10th Cir. 2015); United States v. Nelson, 465 F.3d 1145, 1149 (10th Cir. 2006); see also United States v. Torres, 282 F.3d 1241, 1242, 1246 (10th Cir. 2002) (allowing petitioner to avoid bar against successive petitioners by styling petition under different name would erode procedural restraints of Sections 2244(b)(3) and 2255). When determining the nature of a motion, the Court considers each issue in the motion. Spitznas v. Boone, 464 F.3d 1213, 1224-25 (10th Cir. 2006). An issue should be considered part of a second or successive petition "if it in substance or effect asserts or reasserts a federal basis for relief from the [defendant's] underlying conviction." Id. at 1225.

I motioned the district court to apply the standard of review for new trial motions based on rule 59(a). ECF 187, at 9 – 10. The court again did not do so. ECF 190. Generally, this court reviews the denial of a motion for a new trial for abuse of discretion. United States v. Gwathney, 465 F.3d 1133, 1144 (10th Cir.2006). Henning v. Union Pacific R. Co., 530 F. 3d 1217 (10th Cir.2008). A district court abuses its discretion when it bases it's ruling on an erroneous view of the law. Zurich N. Am. v. Matrix Serv., Inc., 426 F.3d 1281, 1289 (10th Cir.2005). A new trial cannot be granted unless the error was prejudicial and affects the party's substantial rights. Fed.R.Civ.P. 61. When a district court applies an incorrect standard to a motion for a new trial, this court will not remand to the district court for reconsideration under the proper standard if the error was harmless. Henning v. Union Pacific R. Co., 530 F. 3d 1206, 1217. To determine if the district court's error was harmless, this court must consider whether the district court would have abused its discretion by granting a new trial by first examining this court's standard of review when a district court grants a new trial and

then examine my claims of error for which I am seeking a new trial. Id.

A party seeking a new trial on newly discovered evidence must show "(1) the evidence was newly discovered since the trial; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence [was] material; and (5) that a new trial, with the newly discovered evidence[, will] probably produce a different result." Graham v. Wyeth Labs., 906 F.2d 1399, 1416 (10th Cir.), cert. denied, 498 U.S. 981, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990); accord McCullough Tool, 343 F.2d at 410.

Arguments:
The district court abused its discretion by failing to apply the standard of review that was appropriate on rule 59(a) motions, such as mine. See United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir.2005) (holding where district court applied the wrong standard in considering motion for new trial it abused its discretion). The district should have applied the elements in Graham v. Wyeth Labs, as discussed below:

**The evidence was newly discovered since the trial.**
The newly discovered evidence include:

i. CCRD Recording. Approximately three-hour long audio recording with the Colorado Civil Right Division (CCRD) investigator, Ms. Megan Bench. ECF 172, Exhibit 1, for the transcript. ECF 174, Exhibit 2, for the actual recording ("CCRD Recording").

ii. Audit Logs. By Defendants' admissions, "The audit logs for the Google Vault matters related to this litigation are one of two pieces of evidence not available to Plaintiff prior to the hearing." ECF 153, at 5 ¶ 3. ECF 149, Exhibit 2 (Audit Logs for "Kenno 6-15-2018" Google Vault Matter). ECF 149, Exhibit 22 (Audit Logs for "OIT_12102019_Kenno" Google Vault Matter). ECF 166, Exhibit 67. (Audit Logs on Defendants' automatic email deletion practices). Defendants also revealed the existence of Google Vault Audit Logs entries for over 700 searches conducted between November 19 and December 4, 2020. ECF 164, at 161 ¶ 2. On November 8, 2021, Defendants disclosed Google Drive Audit Logs, which showed numerous documents were intentionally deleted. ECF 188, at 208 – 218. See also ECF 172, Exhibit 3, at 10, Footnote # 24, Defendants' admission about intentionally destroying access to the August 2018 disclosures.

iii. Deleted Emails. On June 7, 2021, a month after trial, during a hearing inside the district court, several emails withheld by the Defendants were uncovered. One of those emails is an email Ms. Logacheva sent on June 14, 2018 ("June 14th email"). ECF 149, Exhibit 15. ECF 133, at 42:16 – 43:4. ECF 149, Exhibit 52, for some of the other emails uncovered from Defendants' Google Vault. Additionally, well after trial, Defendants disclosed an email from their spokesperson confirming Defendants' automatic deletion policy of

emails. ECF 172, Exhibit 3.

iv. Other withheld documents. During trial, Defendants withheld audio and video recordings that were in their custody during discovery. ECF 138, Exhibit 1, see the entry for 6/8/2021. ECF 149, Exhibit 26, Exhibit 27, Exhibit 39, all disclosed after trial. Additionally, Defendants' hidden YouTube videos were uncovered, wherein, Defendants' employees are instructed how to protect emails from automatic deletion. ECF 149, Exhibit 7 and Exhibit 8.

### **The moving party was diligent in discovering the new evidence.**

In December 2019, I filed a motion to compel Defendants with the Colorado State Personnel Board ("Board") to produce documents in discovery. ECF 149, at 186 – 194. Among the documents I sought in Discovery were those pertaining to Defendants' Google Vault system, including Audit Logs. ECF 164, Exhibit 054: see RFP 3 at 16, ROG 27 at 42, RFP 19 and RFA 8 at 45, RFA 10 at 46, RFP 18 at 59, RFI 2 at 68, ROG 2 at 74. Defendant refused to produce responsive documents, as demonstrated by Defendants' answers. Id. Forensic examination of Defendants' Google Vault system was so important to me that I personally argued to the Board, in the middle of my own deposition, that my experts should be allowed to conduct forensic examination of Defendants' Google Vault, even though I had two attorneys at the time. ECF 188, at 102, 12:36 – 41. On December 18, 2020, I directed my attorneys to conduct 30(b)(6) depositions, primarily to learn the truth about Defendants' evidence preservation systems and methods. ECF 149, Exhibit 06, for the 30(b)(6) notice. On December 22, 2020, my attorneys motioned the Board to allow my experts to forensically inspect Defendants' Google Vault system, which the Board denied, twice. ECF 188, at 19; 00:43:00. Id, at 177 - 178. ECF 188, at 55 [emphasis added]. ECF 188, at 1 [emphasis added]. The Board also declined to order Defendants to allow my experts to remotely examine Defendants' Google Vault. ECF 188, at 16; 00:50:30.

Even after the Board's repeated denial of my motions to get Defendants' Google Vault examined, I diligently conferred with Defendants' counsel to have my expert conduct forensic examination of Defendants' Google Vault records. ECF 188, at 53 – 56 [emphasis added] at 54 and 56. I then came to the district court to ask for the same. ECF 113, at 3:12 – 4:4. Over the course of three separate discovery dispute hearings held on March 3, 2021, March 24, 2021, and June 3, 2021, I asked the district court to allow forensic examination of Defendants' Google Vault system by my forensic experts on my expert's computer, or have an independent master be appointed. ECF 116, where I myself argued even though I was represented by counsel at the time. ECF 159, at 25:20 – 26:4. I sought this court's help to avoid having to resort to begging Defendant for evidence, like I did in ECF 149, Exhibit 03, at 00:25:26 to 00:26:52. I sought this court help because Defendant had demanded to conduct searches of their Google Vault under their own terms that I had to accept. ECF 188, at 57 – 61. Id, at 95 - 99.  Unfortunately, this court declined to appoint an independent master. ECF 149, ECF 133, at 29:17 – 18.

When Defendants produced empty audit logs, I diligently sought to understand why it was blank. ECF 149, Exhibit 03, at 34:30 - 36:35. A few weeks after the district court held a trial on Defendant's motion for sanction, on May 28, 2021, Defendants filed a motion with the Board seeking attorneys' fees and costs. ECF 188, at 85 – 94. One of the exhibits attached to Defendants' motion with Board mentioned "re: audit logs." Id, at 94. Further discussions with Defendants' counsels revealed that they are in possession of Google Vault Audit logs that were not blank. That's how I learned about Defendants' Google Vault Audit Logs could not be blank. Subsequently thereafter, the June 3 and 7, 2021 hearings were scheduled by the district court, which yielded a limited amount of Google Vault Audit logs. ECF 149, at Exhibit 2 and Exhibit 22.

Following the June 3 and 7, 2021 hearings, when I found out there were more Google Vault Audit logs that were withheld by Defendants, between June 24 and 25, 2021, I contacted the district court six times to schedule a hearing, to no avail. ECF 188, at 205 – 207. When I became pro-se, I filed two motions with the district court to force Defendants into disclosing the Google Vault Audit logs they withheld. ECF 155 and ECF 186. Moreover, through my former attorneys, I repeatedly subpoenaed Google for records. ECF 188, at 64 – 81. During the hearings on Defendants motions for sanction, my counsel informed the district court about one of those Google subpoenas and our intention to get evidence admitted after trial. Exhibit 176, at 422:11-17.

In the end, I spent over $200,000 in attorney's fees during discovery alone. ECF 149, Exhibit 049. I also sought to obtain evidence using the Colorado Open Records Act (CORA) requests. ECF 155, Exhibit 1, at 7 – 8. I used CORA requests even when Defendant demanded over $100,000 before disclosing the evidence they withheld. Id. When Defendants demanded over $100,000 from me before disclosing evidence via CORA, I had less $400. ECF 188, at 62. Not only did I fight diligently to my last few dollars, but I also risked my life to make travel arrangement to Ethiopia, in the middle of a global pandemic, all in an effort to locate, verify and produce the CCRD recording for the Defendant. ECF 163, Exhibit 69.

**The newly discovered evidence could not be merely cumulative or impeaching**

i.  The CCRD recording:
    The district court determined, the CCRD Recording is "The one exception…[which] create[s] the need for reconsideration." ECF 168, at 8, Footnote #2. Therefore, the CCRD Recording is neither cumulative.

ii. Audit Logs:
    Before trial, Defendants' withheld Google Vault Audit Logs, including Audit Logs for my GOIT Google Drive, by going as far as producing a blank Audit Log file. ECF 149,

Exhibit 3, 09:40 - 12:30 and 34:30 - 36:35. Therefore, the newly discovery Audit Logs, which had content, are not cumulative.

iii.  Deleted Emails:
After trial, Defendants disclosed an email from their spokesperson, who confirmed Defendants' practice of automatically deleting emails. ECF 172, Exhibit 3. Additionally, after trial, and over the objections of Defendants' counsels, the truth about an email Ms. Logacheva sent on June 14, 2018 ("June 14[th] email") was disclosed. Ms. Logacheva's June 14th email is not cumulative. ECF 175 32:2 – 34:14. Another email obtained after trial was from a former Denver Post reporter's about "on the record" interviews with Defendants' executives, who had confirmed the existence of automatic email deletion practices in October of 2016. ECF 186, Exhibit 1.

iv.  Other withheld documents:
Defendants' discovery responses asserted that there were no audio and/or video files on my GOIT Google Drive. ECF 149, Exhibit 25, at 3 ¶ 5. ECF 149, Exhibit 21, at 2 ¶ 4 to 3 ¶ 1. ECF 176, at 402: 4 – 5. After trial, Defendants suddenly found numerous video files from my GOIT Google Drive. ECF 188, at 208 – 218, for the audio files (page 214, see "ACR Recording" entries at the top.) ECF 149, at Exhibit 24 for the list of video files. After Defendants' sudden discovery, when searches were conducted in my GOIT Google for the same audio and video files, none of them were located, except one video that I had no knowledge had existed. ECF 150 at 9 – 11; Exhibits mentioned in ECF 150 are in ECF 149.

**The newly discovered evidence was all material.**

i.  The CCRD Recording:
Defendants' victory would not have been possible had it not been for the sworn testimony from Ms. Bench's. ECF 134, at 9 ¶ 51. Id, at 28. Ms. Bench[1] provided two affidavits in support of Defendants' motion before the district court. ECF 112, Exhibit 1. ECF 134, Exhibit EE. Ms. Bench swore that "Mr. Kenno told me that his first protected activity was on May 18, 2018. … Mr. Kenno told me this information in response to a question I asked him about his first protected activity because his complaint of discrimination stated he engaged in protected activity in March 2018. Mr. Kenno told me that the complaint of discrimination contained a typo and it should have said May 2018, not March 2018." Id, at 2 ¶ 5. Its noteworthy that Ms. Bench was the first to testify for the Defendants' during the hearings conducted by the Board. Contrary to Ms. Bench's testimony, the CCRD recording shows that I had informed Ms. Bench the March 18 date was not wrong. ECF 172, Exhibit 1, at 6. ECF 174, Exhibit 2 -- 00:13:21 to 00:13:53. The CCRD recording also shows that Ms. Bench confirmed the first time my discrimination complainant was connected to a

---

[1] Ms. Bench was not identified as a witness during discovery.

**A-12** Appellant/Petitioner's Opening Brief – 12/16

protected class involved my HSA. ECF 172, Exhibit 1, at 31. ECF 174, Exhibit 2 --
01:11:13. The CCRD recording further revealed that I had signed a second Complaint of
Discrimination, which was written by Ms. Bench herself and had listed March 18, 2018, as
the date that I first engaged in a protected activity. ECF 172, Exhibit 6, [emphasis added at
2]. Furthermore, I had also signed a third Complainant of Discrimination, all written by the
CCRD, which had listed March 18, 2018, as the date that I first engaged in a protected
activity. ECF 149, Exhibit 050.[2] Additionally, the telephone conversation that I had with
the State Benefits office on March 19, 2018, can be heard in the CCRD recording. ECF
172, Exhibit 1, at 2 to 4. ECF 174, Exhibit 2 -- 00:05:24 to 00:08:46 and Exhibit 0121, at
00:05:24 to 00:08:46, after which I sent Ms. Logacheva an email concerning comments
about dolling out welfare checks. It's noteworthy to add that the CCRD Recording also
contains a replay of the January 5, 2018, recording that Defendants had alleged were
manipulated. ECF 172, Exhibit 1, at 8 to 10. ECF 174, Exhibit 2 -- 00:20:32 to 00:22:29.
The CCRD Recording is material to all issues that Defendants had raised in their motion
for sanctions.

ii. Audit Logs:
Defendants' motion for sanction alleged that the HSA Emails were fabricated. ECF 101. In
support of their allegations, Defendants asserted: "***First,*** GOIT placed litigation holds on
both Plaintiff's and Ms. Logacheva's email addresses. See Ex. L, Declaration of Lilo
Santos, …. These emails cannot be located in the preserved email accounts." Id, at 11 ¶ 2.
In a similar motion before the Board, Defendants produced another version of Mr. Santos'
declaration. ECF 149, Exhibit 28. Mr. Santos, Defendants' Director of Google Operations,
swore that Defendants' Google Vault had preserved every single email that I had ever sent
and received, while being employed by the Defendants. Id ¶ 3. During trial, Mr. Santos
testified that all emails I had sent and received have been preserved in Defendants Google
Vault. ECF 175, at 192:4– 12. Mr. Santos also testified that Defendants' Google Vault
preserves all emails that I might have deleted during my employment. ECF 175, at 213:6 –
22. During discovery, as a 30(b)(6) witness, Mr. Santos testified that the "Kenno 6-15-
2018" is the only Google Vault Matter created to preserve emails and Google Drives.

The Google Vault Audit Logs for "Kenno 6-15-2018" revealed that Defendants did not
preserve the HSA Emails. ECF 153, at 7 ¶ 3, where Defendants admit "Plaintiff is correct
that the first litigation hold (identified in Google Vault as "Kenno 6-15-2018") initially
only preserved emails within a two-week time frame." The "Kenno 6-15-2018" Audit Logs
further revealed that Defendants willfully falsified material evidence by backdating the
start date of when emails were preserved in the "Kenno 6-15-2018" Google Vault Matter.
ECF 149, Exhibit 2, at Rows 2979 to 2980. See ECF 149, Exhibit 45, at 2, ¶ 10, for an
affidavit from a forensic expert. As ironic as that might have been, the most shocking

---

[2] Respondent represented to the Board that I did not raise my HSA discrimination complaint during the unemployment hearing.
To the contrary, per footnote on Exhibit 079 (a 2019 filing in the Colorado Court of Appeals), I did in fact mention my HSA
discrimination complaint.

revelation was that Defendants falsified material evidence in the "Kenno 6-15-2018" Google Vault Matter just one day after a fraudulent domain was created. ECF 148, Exhibit 5, at 2 to 3, where Mr. Santos, the same person who falsified evidence the "Kenno 6-15-2018" Google Vault Matter was listed as the owner. The icing was that "Kenno 6-15-2018" was falsified "at the [Defendants'] counsels' request." ECF 153, footnote at page 9. Its noteworthy that Defendants did not amend the answers Mr. Santos gave in 30(b)(6). To the contrary, during trial, Defendants showed a video for the district court, in which Mr. Santos searches the "Kenno 6-15-2018" Google Vault Matter for the HSA Emails. ECF 175, at 202. The video was recorded on December 9, 2020, well after Mr. Santos falsified evidence. Id, at 193:17 – 19. Mr. Santos' 30(b)(6) false testimony, as well as Defendants use of the searches they run in the "Kenno 6-15-2018" Google Vault Matter has judicially bound Defendants to the litigation hold of emails defined in "Kenno 6-15-2018." In addition to the falsification of evidence, Audit Logs for the "Kenno 6-15-2018" Google Vault Matter revealed other false testimonies, ranging from the preservations of Google Drives, to the searches conducted in Defendants' Google Vault system, all of which are enumerated in detail in ECF 150, at 9 – 12 (Exhibits mentioned therein are found in ECF 149) and ECF 164 at 5 – 7 (Exhibits mentioned therein are also in ECF 164; beginning on page 12).

Defendants' conduct of hiding the truth was not limited to the Google Vault Audit Logs for the "Kenno 6-15-2018" Google Vault Matter. During trial, Defendants produced yet another affidavit from Mr. James Karlin, Defendant employee. ECF 134, at 2 ¶ 5, citing Exhibit AAAA. Mr. Karlin's affidavit stated Defendants did not have a mechanism for the automatic deletion or purging of emails after a certain period. Id, ¶ 6. Mr. Santos also testified to the same. ECF 175, at 187:14 – 20. After the district court dismissed my claims, Defendants disclosed additional Google Vault Audit Logs. ECF 164, at 158. The newly disclosed Google Vault Audit Logs show Defendants do have a mechanism for the automatic deletion or purging of emails after a certain period, many of which were put in place since 2016. ECF 166, Exhibit 067. The Audit Logs show that Defendants' automatic deletion of emails were in-place during 2017 (year I was hired), remained in-place during 2018 (year I was terminated). ECF 164, at 16 – 17 ¶ 14.b for the forensic analysis of Defendants' recently disclosed Google Vault Audit Logs. See ECF 166, Exhibit 067, at Rows 500 – 501 for Defendants' automatic deletion of emails, applicable to all accounts using the "state.co.us" domain like my GOIT email account (yoseph.kenno@state.co.us), and Ms. Logacheva's (lyubov.logacheva@state.co.us). Audit Logs also revealed that the individuals that implemented automatic deletion of emails were the same individuals that the district court cited to make a finding of fact that was nothing short of fiction; namely Mr. Karlin and Mr. Santos. ECF 164, at 17 ¶ 14.c, where Mr. Karlin's GOIT account is identified by a forensic expert. See ECF 166, Exhibit 067, at Row 690, wherein, Mr. Santos is observed manipulating automatic email deletion on November 19, 2020 (same date Mr. Santos falsified evidence in "Kenno 6-15-2018".)

Audit Logs that show Defendants had failed to preserve the HSA Emails is material to the issues in this case. Audit Logs that show Defendants' conduct of willfully falsifying evidence is material to the issues in this case. Audit Logs that show Defendants manipulated automatic email deletion of emails is material to the issues in this case. Audit Logs that show the existence automatic deletion of emails is material to the issues in this case. It is also material that Defendants falsified evidence (and manipulated automatic email deletion of emails) only one day after the fraudulent domain that planted emails into my GOIT email account was created, by Mr. Santos, the same person who engaged in the aforementioned falsification of evidence. Audit Logs that show Defendants had withheld audio files from my GOIT Google Drive, as they were accusing me of falsifying an audio recording, is material to the issues in this case. Additionally, Audit Logs that Defendants are refusing to disclose are also material. Specifically, all Audits Logs from Defendants Google Vault of activities that occurred between November 19, 2020, and December 4, 2020; the date range in which emails were planted in my GOIT email account.

iii. Deleted Emails:
The district court's order dismissing my claims stated "Ms. Logacheva… did not delete any emails relevant to Plaintiff's claims." ECF 134, at 30 ¶ 2. Most notably, the district court also concluded that "As for Plaintiff's claim that Ms. Logacheva could have deleted emails, he has presented no evidence to support this." Then Ms. Logacheva's June 14, 2018, email ("June 14[th] email") was found. ECF 149, Exhibit 15.

To understand the relevance of the June 14th email, knowing the sequences of events leading up to that email is important. On June 11, 2018, Ms. Logacheva gave me a Performance improvement Plan. ECF 175, at 31:18 – 19. On June 12, 2018, I filed a discrimination complaint with the EEOC. ECF 74 ¶ 13. Only two days later, on June 14, 2018, Ms. Logacheva sent documents and files via email for my corrective actions. ECF 149, Exhibit 12. ECF 175 32:2 – 34:14. My last day working for the Defendants was July 10, 2018. Ms. Logacheva's June 14th email is relevant to my claims and defenses because it reveals precisely when Defendants started retaliating against me for my protected activity of filing a complainant with the EEOC.

In her deposition, Ms. Logacheva was asked if she had the original June 14th email that had generated an automatic out-of-office reply email. ECF 149, Exhibit 12. See ECF 149, Exhibit 13 for the out-of-reply email. Ms. Logacheva asserted that the June 14th email exists in her GOIT email account. Id. Ms. Logacheva further denied deleting any emails. Id. A few months later, Ms. Logacheva could not locate the June 14th email in her GOIT email account and denied sending any emails on June 14, 2018. ECF 149, Exhibit 14. During trial, Ms. Logacheva testified that she had deleted emails after all. ECF 175, at 26:11 – 13. But Ms. Logacheva also testified that she did not delete the HSA Emails, or any other emails relevant to my claims or defenses (such as the June 14th email). Id, at 40:5 – 10. After trial, on June 7, 2021, in a search conducted inside the district court, the June

14th email that Ms. Logacheva could not locate in GOIT email account was found. ECF 133, at 42:16 – 43:4. The discovery of the June 14th email in Defendants' Google Vault, instead of Ms. Logacheva's GOIT email account, shows that either Ms. Logacheva does delete emails or something else does, like an automatic deletion. If Defendants had not established "Kenno 6-15-2018" Google Vault Matter the very next day, the June 14th email would not have been preserved. See ECF 149, Exhibit 1, at 123:18 – 124:19 and ECF 149, at Exhibit 2, at Rows 2 and 3, for when Defendants established the "Kenno 6-15-2018" Google Vault Matter.

If Ms. Logacheva's June 14th email could be deleted (as relevant as it was and still is), then the HSA Emails that were sent three months prior, on March 19 and 20, 2018, could be deleted too. In fact, much like the March 19 and 20, 2018 HSA emails, the email that Defendants had claimed was the last HSA email I had sent on March 2, 2018, could not be located in Defendants' Google Vault. See ECF 134, at 5 ¶ 21, where in the district court's finding discusses' the so-called last HSA email, and reference Exhibit BB, which in turn is bates labeled (bottom right of the page) as GOIT_2019G001(C)_057437 to GOIT_2019G001(C)_057445 ("March 2nd HSA Email"). Defendants' discovery response stated that "GOIT_2019G001(C)_057437 to GOIT_2019G001(C)_057445 … is not in OIT's possession, custody, or control." ECF 164, at 72. It's also noteworthy that in the searches that Defendants conducted for the HSA Emails within their Google Vault, the March 2nd HSA Email was missing (in other words, it was not only the March 19 and 20, 2018 HSA Emails). ECF 101, Exhibit L-1, wherein the search results show no emails from March 2, 2018. Ms. Logacheva's June 14th email that was deleted from her GOIT email account is material in this case as it shows the district court was wrong when it concluded that "As for Plaintiff's claim that Ms. Logacheva could have deleted emails, he has presented no evidence to support this." Additionally, the June 14th email, which is relevant to my claims, shows that the district court was wrong when it concluded "Ms. Logacheva… did not delete any emails relevant to Plaintiff's claims."

Even without Ms. Logacheva's June 14th email, newly discovered shows that Defendants had destroyed 72,000 emails that were stored in my GOIT Google Drive. The missing March 2nd HSA Email that Defendants seemingly could not locate in the "Kenno 6-15-2018" further highlights the need to forensically examine Defendants' Google Vault and the over 2,700 Google Vault Matters therein. Defendants failed to disclose the existence of over 2,700 Google Vault Matters before trial and during discovery.

iv.  Other withheld documents:
The original January 5, 2018 audio recording that was replayed inside the CCRD Recording was saved on my phone's SD Card, and uploaded to my GOIT Google Drive. ECF 175, at 303:24 – 304:1. Id, at 322:16 – 19. Defendants denied being in possession of any my audio or video files that I had saved on my GOIT Google Drive. ECF 175, at 401: 18 – 19. During trial, where Defendants accused me falsifying the January 5, 2018 audio

recording, Defendants presented no evidence that the January 5, 2018, audio recording was manipulated on my personal devices, despite having access to both. In my defense, I had always asserted that the January 5, 2018, that I provided to my attorneys during discovery was disclosed to me by Defendants on August 3, 2018 using Google Drive's sharing technology. ECF 175 at 227:23 – 25. Unfortunately, the SD Card on my phone was corrupted; requiring me to use the January 5, 2018 recording from Defendants August 2, 2018 disclosures. ECF 201, at 9. Defendants had since intentionally removed access from the August 3, 2018 disclosures. The discovery of "ACR Recorder" audio recordings (ECF 138, Exhibit 1, entry for 6/8/2021), some of which remain undisclosed by Defendants, and other video recordings that were disclosed after trial, answers the question the district court posed upon dismissing my claims: "why anyone other than him would have any reason to [manipulate files]?" ECF 134, at 27 ¶ 3 – 28 ¶ 1. Furthermore, before Defendants filed their motion for sanction with the district court, Ms. Logacheva and Mr. Santos were observed downloading files from my GOIT Google Drives, just as "ACR Recording" files were getting anonymously deleted. ECF 188, at 211 – 218. Defendants withheld information about audio recordings that were deleted from my GOIT Google Drive, as the district struck my testimony regarding Ms. Logacheva's actions in my GOIT Google Drive. Without any shame, Defendants asserted to the district court that no files had been deleted. ECF 176, at 401:19.

## **The newly discovered evidence, will probably produce a different result.**

i.  CCRD Recording:
    The district court relied on Ms. Bench's recollection of a phone conversation that was conducted on June 12, 2019, to dismiss my claims. ECF 134, at 8 – 11. Newly discovered evidence shows the district court was misled. Barring any abuses of discretion from the district court, the newly discovered evidence will probably produce a different result.

ii. Audit Logs:
    The district court relied upon falsified evidence in Defendants' Google Vault to rule that I had falsified evidence. ECF 134, at 2 – 3. Newly discovered evidence shows there are over 2,700 Google Vault Matters Defendants had withheld, including Audit Logs, which might help me locate 172,000 of my emails, the August 2018 Disclosures, and audio recordings. The Audit Logs pertaining to searches conducted in Defendants Audits Logs that Defendants will not disclose, will probably help me to obtain the truth about the fabricated domain, and Defendants' knowledge.

iii. Deleted Emails:
    Defendants' spokesperson, who has in the past confirmed Defendants' practice of automatically deleting, will probably confirm the same for a different result in this case.

ECF 172, Exhibit 3.

iv. Other withheld documents:
The `wilsonlying` video; an ironic name given to a file that was withheld by Defendants, and the size of the movie 'titanic.' ECF 150, at 11. ECF 149, Exhibit 26, THE titanic. Defendants withheld titanic, while they accused me falsifying an audio file that was less than 3 mins long. The titanic, combined with the ACR Recordings that Defendants continue to withhold, and forensic analysis of each file as they exist in my GOIT Google Drive, will probably produce a different result.

**c.     Second Issue:** The district court's decisions resolving discovery disputes were prejudicial.

**Argument and Authorities:**
The district court's rules provide that "Before filing a motion for an order relating to a discovery dispute, the movant must request a conference with the Court by submitting an email, copied to all parties, to hegarty_chambers@cod.uscourts.gov. See Fed. R. Civ. P. 16, cmt. 2015 Amend. The Court will determine at the conference whether to grant the movant leave to file the motion." ECF 192-2, at 4 ¶¶ C. In this circuit, erroneous denial of discovery is ordinarily prejudicial in the absence of circumstances showing it is harmless. The enormity of the district court's abuse of discretion during discovery in this case will become apparent after comparing discovery dispute hearings that both parties initiated.

Defendants initiated the first three discovery dispute hearing, wherein Defendants motioned the district court to allow their experts access to my personal devices (a family laptop and a cell phone). ECF 72, 76 and 82, transcripts of which are under ECF 201, 80 and 85, respectively. Before issuing a decision on Defendants' discovery disputes, the district court was informed that Defendants' experts had initially signed a contract to work for me, including having a lengthy conversation with me, before suddenly cancelling the contract they entered with me, to work for the Defendants. ECF 80, at 6:19 – 25. Furthermore, after I signed a contract with Defendants' expert, I had brought my devices to their offices to show them locations of privileged information on my devices. Id, at 7. My attorneys argued against granting Defendants' experts access to my personal devices, as it would cause privileged information to be accessed (when no one is looking). ECF 201, at 1 – 11. Despite the concerns my attorneys raised, the district court ruled "defendant's expert should have access to the two devices, do their search, pull off ***whatever*** they pull off." ECF 201, at 25:17 – 18. ECF 84.

Just like Defendants, I too initiated three discovery dispute hearings to allow my expert to obtain forensic access into Defendants' Google Vault and Audit Logs. ECF 111, 115, 128 transcripts of which are under ECF 113, 116, 159, respectively. To establish my defense, during discovery, I

formally requested forensic inspection of Defendants' Google Vault system. Defendants repeatedly refused to allow any inspection of their Google Vault system. ECF 164, at 34 - 35 ¶ 3, 60 ¶ 27, 63 ¶ 19, 77 ¶ 18, 86 ¶ 2, 92 ¶ 2. The reason was due to the sheer number of affidavits Defendants produced from their employees, who swore about conducting searches but being unable to find the two HSA Emails in dispute within Defendants' Google Vault system. ECF 188, at 219 – 221. In the first discovery dispute hearing that I initiated, my expert's affidavit was used to explain to the district court that direct access into Defendants' Google Vault system was vital in order to forensically search for and obtain relevant metadata from the disputed HSA emails, and the emails Defendants are alleging I planted into their Google Vault system. ECF 113, at 3:12 – 4:4, citing ECF 109-13 ¶ 6. However, unlike the decision to allow Defendants' experts to "pull off whatever they pull off," the district court would not allow my expert to have any form of direct forensic access into Defendants' Google Vault and Audit Logs. See ECF 113, at 9:6 – 9. In the second discovery dispute hearing, I myself argued to allow my expert direct forensic access into Defendants Google Vault system and Audit Logs. ECF 116 at 5:23 – 7:1. Id at 7:9-11. My argument also informed the court about emails that I had preserved on my GOIT Google Drive. Id. By Defendants' admissions, 172,000 emails were saved in my GOIT Google Drive, which Defendants claimed were preserved in Google Vault but were unwilling to produce it. ECF 149, Exhibit 18, at 7 ¶ 3 - 5. My arguments did not convince the district court. ECF 116, at 25:13 - 27:2. ECF 188, at 60 – 61, a proposed order from my counsel that the district court would not sign. Without an order from the district court allowing forensic access, Defendants refused any kind of forensic examination of their Google Vault system. Id. at 55 – 59.

**The district court's discovery dispute decisions caused unequal access to evidence.**
When Defendants' experts prepared their expert report, they had access to a custom curated emails and documents from Defendants' Google Vault, including emails from my GOIT email account, as well as Ms. Logacheva's GOIT email account. ECF 175 at 129:19 – 130:3. Defendants' experts were also in direct contact with the CCRD. On the other hand, my expert did not have access to any emails from Ms. Logacheva's GOIT email account, including emails; nor did my expert had access to documents that were curated by the Defendants; my expert did not have any direct contact with the CCRD. ECF 134, Exhibit 12, the report written by my expert (admitted during the May 5, 2021, hearing); it's bereft of any mention of emails from Mr. Logacheva's GOIT email account being disclosed; or any custom curated document; or any contacts with the CCRD. The only emails from Defendants to which my expert had access were emails Defendants had claimed were planted into my GOIT email account from a fraudulent domain, which did not contain any metadata for forensic analysis. ECF 109-13 ¶ 6. The district court's denial to allow any direct forensic access into Defendants' Google Vault, including from that of an independent master, resulted in unequal access to evidence, and was prejudicial.

**The district court's discovery dispute decisions left me defenseless.**
The bedrock of my defense against Defendants' allegations were emails and documents, including audio and video files, that Defendants shared with me in early August 3, 2018 ("August 2018 disclosures"). ECF 116 at 17:15 – 18:16. The August 2018 disclosures were made

pursuant to Rule 6-10 of the Colorado State Personnel Board. ECF 134, at 7 ¶ 36. To respond to the allegations that Defendants had made in a Rule 6-10 meeting, I asked Defendants' HR Representative, Mr. John Bartley, for my GOIT emails. Id ¶ 37. My email to Mr. Bartley read as follows: "*I need to obtain the emails in my mailbox. Could you arrange for the google team to download them into an outlook pst file? I will then grab the pst file from you. If downloading my entire box into a pst file is not possible, I would like to get emails from May 16th 2018 to July 11th 2018. I am making this request so that....*" ECF 134, Exhibit VVV, at 2. Mr. Bartley's response indicated that he'd disclosed emails ranging from May 16 to July 11, 2018. Id, at 1. But the emails Mr. Bartley disclosed went back to 2017. For the trial with the district court, Mr. Bartley's affidavit stated that he had not accessed the very emails he had shared with me. ECF 134, Exhibit ZZZ, at 3 ¶ 37. More precisely, during the Board hearing, when Mr. Bartley was asked if he would contradict my testimony that emails going all the way back to 2017 were disclosed, Mr. Bartley responded: "I wouldn't be able to contradict." During trial, the district court took judicial notice of the transcript from the Board's hearing. ECF 175, at 111. See the screenshot below, from the transcript of the Board hearings (lines 13 - 16).

```
                                                        17
1        Did you actually look into that file to see
2   what emails were provided to Mr. Kenno?
3        A. No, I did not.
4        Q. And you didn't follow up with this -- what is
5   it called, the Google something team?
6        A. It's the Identity and Access Management Team.
7        Q. Okay. You didn't ask them -- after this
8   drive was provided to Mr. Kenno, you didn't talk to
9   them about the drive, correct?
10       A. I did not talk to them about the context of
11  it, and I hadn't heard anything from Mr. Kenno to
12  indicate that they did not fulfill the request.
13       Q. So if Mr. Kenno were to say that he had
14  access to emails going all the way back to 2017, you
15  wouldn't be able to contradict him?
16       A. I wouldn't be able to contradict.
17       MS. SCHULZE: Object to form, and then
18  misstates the testimony. Object to form. Sorry,
19  doesn't misstate the testimony.
20       THE COURT: How -- you're saying it misstates
21  testimony or no?
22       MS. SCHULZE: No, I'm not. I'm saying object
23  to form. Object to the form of the question.
24       THE COURT: And what's the problem with the
25  form?
```

Before filing a motion for sanctions with the Board in October 2020, Defendants intentionally destroyed my access to the August 2018 disclosures. ECF 172-2, at 10 footnote # 24. During my second and third discovery dispute hearings, I repeatedly informed the district court that my

expert should be granted forensic access into Defendants' Google Vault to, among other things, locate and forensically analyze the August 2018 disclosures. ECF 116, at 28. Forensic examination of Defendants Google Vault, as it relates to the August 2018 disclosures was especially relevant given Mr. Bartley had repeatedly testified that he had preserved his GOIT Google Drives, as well that of thirteen other individuals, in Defendants Google Vault. ECF 149, Exhibit 1, at 104:19 – 105:13. ECF 149, Exhibit 44, at 93:10 - 21. Yet, the court declined to order the forensic examination of Defendants' Google Vault to locate and forensically analyze the August 2018 disclosures because doing so "would then be trying to prove a negative." ECF 116, at 24:3 – 5. Despite denying the forensic examination of Defendants' Google Vault to locate the August 2018 disclosures, the court granted Defendants' motion for sanctions, in which, the court concluded that the August 2018 disclosures "did not include [the HSA emails from] March 2018." ECF 134, at 31 ¶ 2. I didn't think a district court's abuse of discretion can be any more abusive. Except, it does.

### It was an abuse of discretion for the district court to deny two motions for the disclosure of Defendants' Google Vault Audit Logs

Defendants' motion for sanction claimed that they found out about the email planted by the fraudulent domain on December 9, 2020, only after I allegedly incriminated myself. Defendants denied having any knowledge about the planted emails from a fraudulent domain that occurred over the course of two week (from November 18, 2020, to December 4, 2020). ECF 101, at 13 ¶ 2. Defendants further asserted that their employees did not conduct any searches that could have revealed the existence of the planted emails. Id, at 15 ¶ 2. Yet, Defendants refused to disclose Google Vault Audit Logs that contained 700 searches, which were conducted between November 18, 2020, to December 4, 2020, in their Google Vault system. ECF 164, at 161 ¶ 2. When I motioned the district court for the disclosure of Google Vault Audit Logs, the court denied my motion on the grounds that I sought irrelevant information, twice. ECF 150. ECF 190, at 2, where the district court denied a "third bite of the apple."

Before the district court compared Defendants Google Vault Audit Logs to a "third bite of the apple," the court concluded that there was "nothing strange" in Defendants' Google Vault Audit Logs. ECF 133, at 24 11 – 17. The district court had further concluded that "people aren't conspiring behind his back" before allowing the examination of Defendants' Google Vault Audit Logs. Id, at 19 – 20. But after I filed my rule 59 motion, Defendants Google Vault Audit Logs became a "third bite of the apple." I'll admit that I am ADDICTED to the deluge of facts in Defendants Google Vault Audit Logs. The truth is refreshing. Its noteworthy, in spite of the district court's denial for the Audit Logs (ECF 157), I obtained the Audit Logs via open records showing Defendants did have an automatic deletion of emails going as far back as 2016, which was right before I hired. ECF 164, at 158, wherein Defendants disclose the Audit Logs showing deletion policy. ECF 134, at 1, for when I started working for the Defendants.

The district court's denial of Audit Logs, on the grounds that they were irrelevant (ECF 157),

was an abuse of discretion given the court had already overruled Defendants' objections on relevance. ECF 133, at 24:9 – 16, wherein the district court overruled objections on relevance. It was the most disheartening decisions from the district court.

**d.**     **Third Issue:** The district court made an error of the law and abused its discretion by refusing to admit evidence withheld by Defendants. The court also abused its discretion when denying my rule 59(e) motion.

**Argument and Authorities:**

My first post-trial motion sought relief pursuant to rule 59(e) (among others). ECF 150, at 20 ¶ 2. When denying my rule 59(e) motion, the district court ruled that "Plaintiff had ample opportunity, including at the evidentiary hearing, to raise concerns regarding the litigation holds…" but that I had failed to do so. ECF 168, at 5 ¶ 2. The district court's aforementioned finding is inaccurate.

During trial, I raised concerns about litigation holds of my GOIT Google Drive in Defendants Google Vault when I testified about Audit Logs that had been obtained from the Defendants through an open records request. ECF 176, at 399:5 – 399:25. But the court struck my testimony. ECF 176, at 401:25. The court struck my testimony because it deemed Audit Logs that Defendants' themselves had disclosed was "speculation." Id. at 402:15 – 17.

Moreover, during trial, before the records were closed, my counsel raised concerns regarding Defendants' litigation holds, and motioned the district court for leave to admit records that were to be obtained via a subpoena from Google regarding, among other things, information about Defendants' litigation, which the district court granted. ECF 176, at 422:11 – 21. See ECF 188, at 65 – 70, for the subpoenas issued to Google. After the issuance of subpoenas to Google, Defendants' counsels disclosed the existence of Google Vault Audit Logs that had been withheld during trial. ECF 187, at 6 ¶ 3. When the district court was informed that Defendants had withheld Google Vault Audit Logs, contrary to the leave the court granted during trial, the district court refused to admit any new evidence. ECF 133 at 24:12 – 18. The court refused to admit any new evidence despite my counsel's objections. ECF 159, at 54:8. Id, at 54:18 – 55:2, where my attorney objected. After the court refused to admit new evidence, on June 7, 2021, the Google Vault Audit Logs that Defendants had withheld was in full display for district court to see, including Audit Log entries, where Mr. Santos, falsified the "Kenno 6-15-2018" Google Vault Matter on November 19, 2020, just one day after Mr. Santos created a fraudulent domain to plant maliciously alerted emails in my GOIT email account. ECF 134, at 22 ¶ 128. Even after being shown the critical nature of Defendants' Google Vault Audit Logs, the court again decided that Google Vault Audit Logs will not be admitted before a decision on Defendants' Motion in ECF 101 was issued. After the district court refused to reopen the records to admit Defendants'

Google Vault Audit Logs, in denying my rule 59(e) motion (ECF 150), the court said: "Plaintiff filed no motion seeking to reopen the evidentiary hearing record to include information regarding the Audit Logs." ECF 168, at 5. The district denial to admit evidence, as well as the denial of my rule 59(e) motion were an abuse of discretion. I respectfully request that this court to consider the plain-error standards to this issue.

It's important to note that even though the district court refused to reopen the records to admit Defendants Google Vault Audit Logs, the district court considered videos that Defendants brought to the court's attention after the records were closed, in which they claimed were discovered on my GOIT Google Drive and that I allegedly fabricated them. ECF 116, at 3 – 4, where Defendants mentioned the videos. See ECF 150, at 9 – 11 for the ever-shifting claims that Defendants made about videos and other files in my GOIT Google Drive. In the decision dismissing my claims, and in denying my rule 59(e) motion, the court cited the aforementioned videos, twice! ECF 134, at 39. ECF 168, at 9, footnote #3. The district refused to admit the Audit Logs during the June 7, 2021, hearing. Yet, the district court asked Defendants: "Send both [videos] to me." ECF 133, at 55:2 – 3. Both of what I just described happened on the same day, in the same hearing, with the judicial officer. Id. The punch line was "HOFFA." Id, at 51:2 – 4. The district court abused its discretion in considering two videos for two major decisions in this case, without hearing arguments from me, while refusing to reopen the records to admit Defendants Google Vault Audit Logs.

If this court decides that my counsel's objections in ECF 159, at 54:18 – 55:2 did not amount to an extemporaneous objection (as I believe is the requirement, citation omitted), I respectfully ask that the court apply the plain-error standards in evaluating the issues raised in this section.

   **e.    Fourth Issue:** The district court's admission of a video recorded by Defendants' expert and produced at the 11th hour was prejudicial, an abuse discretion and contrary to the rule of law. The district court also abused its discretion in admitting Mr. Santos' and Mr. Karlin's testimony.

   **Argument and Authorities:**
My expert used Google's email verification system to authenticate the HSA Emails. ECF 175 at 128:8 – 19. However, the district court's decision deemed my expert's use of Google's email verification system as unreliable because Defendants produced a video recorded by their expert purporting to show Google's email verification system can be easily manipulated and was otherwise unreliable. Id, at 119:3 – 125:21. While the court's reasoning in rejecting my expert's use of Google's email verification system and the opinion that was derived therefrom, was well within the discretion of a trial court, it's impossible to understand why the court deemed the same Google's email verification system as reliable, when Defendants' expert used it to authenticate a copy of an email provided by the CCRD. ECF 134, Exhibit G, at 10. Specifically,

on ECF 134, at 17 ¶ 98, the district court cites to Defendants' Exhibit G's page 10 (Defendants' experts' supplemental report), where Defendants' experts conclude "This email header was reviewed using Google's own Admin Toolbox Message header (i.e. Google's email verification system) and it was reported to be an authentic Gmail email header." The district court abused its discretion in accepting Google's email verification system as reliable only when Defendants' expert used it; the same court rejected my expert's use of the same system. The district court's conflicting acceptance of Google's email verification system was prejudicial.

But even accepting the district court's eccentric use of its discretion powers in relation to Google's email verification system, what was clearly unlawful was the court's admission of the aforementioned video that led to the conclusion that "Ms. McDermott demonstrated how a fabricated email could be created in a video, and that email passed through all authentication paths Mr. Brackin relied on to conclude the First MSG Version is authentic." ECF 134, at 30 ¶ 3. The aforementioned video (Defendants' 11th hour disclosure) was recorded by Defendants' expert only 12 days prior to trial, on April 23, 2021. ECF 175, at 120:12 – 18. It was produced by the Defendants during the weekend before trial. Id. Despite my counsel's objection, the court allowed Defendants use it during trial. ECF 175, at 120:25 – 121:3.

The law in this circuit states "A party seeking to introduce expert testimony at trial must disclose to the opposing party a written report that includes 'a complete statement of all opinions the witness will express and the basis and reasons for them.'" TDN Money Sys., Inc. v. Everi Payments, Inc., No. 2:15-cv-02197 JCM (NJK), 2017 WL 5148359, at *4 (D. Nev. Nov. 6, 2017) (quoting Fed. R. Civ. P. 26(a)(2)(B)). As part of this law, "[a]n expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information in the report was 'substantially justified or harmless.'" Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc., 725 F.3d 1377, 1381 (Fed. Cir. 2013). The purpose of this law is to "provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Id.

Prior to Defendants' 11th hour disclosure, during the Board hearings in early April 2021, Defendants produced another video, in which Defendant's expert failed to show Google's email verification system was not reliable. ECF 175, at 125:22 – 126:1. Before trial at the district court, the failed experiment Defendants' expert had conducted was the only information known to me, my counsel and expert. Furthermore, the information from Defendants' 11th hour disclosure was not include in any formal report, as the law requires. Additionally, Defendants' 11th hour disclosure did not allow afford any time for my expert to respond. Defendants' 11th hour disclosure undermined the core defense that I had during trial, and ultimately was the reason the district court rejected my expert's methodology of authenticating the HSA Emails. Defendants' 11th hour disclosure led the way to Defendants' ultimate victory. As such, the admissions and conclusions the district court derived from Defendants' 11th hour disclosure was neither substantially justified nor harmless -- it constituted an error of law and an abuse of discretion by

the district court.

Even if Defendants' 11th hour disclosure was properly disclosed, the video demonstrated how EML emails can be fabricated. EML emails use "raw text files," and their contents can be edited by any text editor. However, I have never used EML emails. When I requested the August 2018 Disclosures, I specifically sought emails using PST format; in which only MSG emails are included. MSG emails are proprietary to Microsoft. The HSA emails were MSG emails. MSG emails cannot be edited by text editors.

Lastly, the admission and consideration of Mr. Santos' and Mr. Karlin's testimony and affidavits regarding Google Vault amounted to an admission of an expert's testimony, which was prejudicial. My expert was not even allowed to be on Zoom to watch me beg defendants. ECF 149, Exhibit 3. It's tragic when someone has to beg as much as I did. Id.

    **f.**       **Fifth Issue:** The district court's finding that I had fabricated the HSA Emails is not supported by forensic evidence. Furthermore, Defendants experts failed to locate any audio manipulation software on my personal devices

**Argument and Authorities:**

Defendants' allegations of fabrication regarding the HSA Emails pertained to the last two emails in a long chain of email. The first was my email to Ms. Logacheva, sent on March 19, 2018. The second was an Ms. Logacheva to me, sent on March 20, 2018. I preserved both emails in MSG email format. The March 20, 2018, email was further preserved in a pdf version. During the discovery dispute hearings Defendants initiated, Defendants provided an affidavit, in which Defendants' expert swore to being "unable" to explain difference observed in these files and was therefore could not reach any conclusions about any file, without access to my personal devices. ECF 66 – 17, at 6 ¶ 6. Defendants' experts' sworn affidavit further provided that if the court were to allow them to "pull off whatever they pull off," they will use their expertise to find incriminating pieces of evidence, itemized as follows:

    a. If any original or other versions of the files exist.
    b. What software and/or applications were utilized to create and/or modify the files.
    c. When, including the date and time each file was created.
    d. What device the file was created on.
    e. The original EXIF or metadata for the files."

Id, at 6 – 7 ¶ 6. Also see ECF 201, at 4:4 – 8.

The law provides that "district court[s] should focus on an expert's methodology rather than the conclusions it generates." Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003). The factors that may be considered in determining whether an expert's methodology is valid has been enumerated by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993).

The methodology that Defendant's experts had proposed was measured by the incriminating list of evidence that Defendants' experts sought to obtain "for each file," including the March 19 and 20, 2018 HSA emails (HSA MSG email files). ECF 66 – 17, at 1 – 2 ¶ 4. ECF 201, at 5:11 – 25. However, after the district court allowed Defendants' experts to "pull off whatever they pull off," Defendants' experts' report and testimony is noticeably silent about locating any previous versions of the HSA MSG emails. Equally absent from Defendants' expert report and testimony were the software and/or application that were utilized to create and/or modify the HSA MSG emails. Furthermore, Defendants' expert did bother searching for any software program that could have been used to fabricate the HSA MSG emails on my personal devices, even though Defendants' expert's sworn affidavit had attested to the contrary. ECF 66 – 17. It is not clear why Defendants' experts did not search for any software program to create/modify the HSA MSG emails. Nevertheless, Defendants' experts' report and testimony concluded that the HSA MSG emails are fabricated because a nameless so-called "free import/export tool for PST files [can] create a PST containing all desired emails." ECF 134, Exhibit A, at 90. ECF 175 at 126:21 – 127:1. In the end, instead of locating any incriminating evidence, the metadata Defendants' experts extracted from the HSA MSG email files showed that the files were "Created" in March of 2018. Most importantly, the "Last Modification Time" of the HSA MSG email files were also in March of 2018. Id, at 91, a screenshot of which is included below:

**Re: Yoseph Kenno - HSA - State Contribution Issue**

iForensic Pursuit reviewed the file entitled "Re: Yoseph Kenno - HSA - State Contribution Issue" that was located on Plaintiff's Dell XPS laptop and the following data was extracted. It should be noted that this file does not have file extension and does not exist as an MSG file on the evidence. It is void of a file extension as it exists in a PST file. A user can copy email files of any format into a folder and then use a free import/export tool for PST files to create a PST containing all desired emails. No determinations can be made about an emails original format before it was imported into the PST.

| Name | Re: Yoseph Kenno - HSA - State Contribution Issue |
|------|----------------------------------------------------|
| Subject | Re: Yoseph Kenno - HSA - State Contribution Issue |
| Sent | 03/20/18 09:09:34 AM |
| Received | 03/20/18 09:09:40 AM |
| Message Size | 155413 |



| Created | 03/28/18 09:31:18 PM |
|---------|----------------------|
| Last Modification Time | 03/28/18 09:31:18 PM |
| To | Kenno - OIT, Yoseph <yoseph.kenno@state.co.us> |
| From | Logscheva - OIT, Lyubov |
| Full Path | untitled\SDCard\Original\PSTs\Laptop\archiveLaptop.pst\PST Volume\Root folder\Top of Outlook data file\LaptopEmails\Re: Yoseph Kenno - HSA - State Contribution Issue\PR_RTF_COMPRESSED |

During discovery, even though Defendants' expert's sworn affidavit had asserted that a conclusion regarding any email purely based on visual differences was impossible. However, when Defendants' experts failed to locate any incriminating evidence, they relied upon visual differences to reach a conclusion on the HSA MSG email files. Defendants' expert's conclusions based purely based on visual differences were not scientific because there were several other emails and documents disclosed by Defendants with obvious visual differences. Additionally, Defendants failed to present any evidence that I had manipulated any audio file on my personal devices.

      **g.**    **Sixth Issue:** Defendants' destruction of evidence was in bad-faith, which requires an adverse inference. Additionally, the district court's application of rule 37 sanction was prejudicial.

**Argument and Authorities:**

"District courts have 'substantial weaponry' in their arsenal to shape the appropriate relief for a party's spoliation of evidence." *Helget v. City of Hays, Kan.*, 844 F.3d 1216, 1225-26 (10th Cir. 2017). Such rulings are reviewed for abuse of discretion. *Id.* at 1225. "Among the options, a court may strike witnesses, issue an adverse inference, exclude evidence, or, in extreme circumstances, dismiss a party's claims." *Id.* at 1226 (citations omitted). "Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009). "But if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Id.*; *see also Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015 ) ("The entry of default judgment or the imposition of adverse inferences require a showing of bad faith."). "Without a showing of bad faith, a district court may only impose lesser sanctions." *Id.*

"Bad faith" is a question of fact like any other, so the trier of fact is entitled to draw any reasonable inference. Mathis v. John Morden Buick, Inc., 136 F. 3d 1153, 1156. The evidence upon which bad faith is shown must be more than conjecture or speculation. See Gilbert v. Cos Co., Inc., 989 F.2d 399, 406 (10th Cir. 1993). It must support an inference that a party actually suppressed or withheld evidence because they were conscious of a weakness in their case. See Aranburu v. The Boeing Co., 112 F.3d at 1407; Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)(noting that the circumstances must manifest bad faith to sustain an inference of consciousness of a weak case). The Court has broad discretion in ruling on a request for a spoliation instruction.

I did not seek sanction under Rule 37, which, according to the laws of this circuit forecloses access to the substantial weaponry in the district court's arsenal. Mathis v. John Morden Buick, Inc., 136 F. 3d 1153. What remains — the possibility of an adverse inference — depends on persuading the court that the evidence was destroyed in "bad faith". Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th Cir.1985). That the documents were destroyed intentionally no one can doubt, but "bad faith" means destruction for the purpose of hiding adverse information.

However, this case is a bit different because the district court applied a rule 37 sanctions against me, as it relates to the CCRD Recording, *after* I had disclosed it. ECF 190, at 4. Furthermore, I disclosed the CCRD Recording after the court granted my motion for leave to do so. ECF 167. ECF 168, at 8, Footnote #2. Whereas the district court did not even consider the destruction of evidence Defendants had unleashed in this case.

In cases past, Defendants had preserved devices of former employees consistently. ECF 164, at

155 – 156. (After-Acquired Evidence section). Defendants' employees can and do save emails and other files on their devices. ECF 175, at 189:9 – 10. ECF 188, 29 – 31, wherein, many of the files in dispute were originally stored on GOIT issued devices. Id, at 33 ¶ 1. When litigation started, I sought to forensically examine my GOIT devices and Ms. Logacheva's GOIT devices. ECF 164, at 46 – 49. Id, at 116 – 119. However, Defendants either shredded or erased devices. ECF 109 – 12, at 1 – 5. ECF 149, Exhibit 1, 172 – 176. Notably, it was Ms. Logacheva and her manager, Mr. Bob McIntyre that sought the destruction of evidence that were saved on my GOIT devices and Ms. Logacheva devices. Id, at 172:8 – 11. Id, at 175:15 – 17. The timing of Defendants destruction of evidence on my GOIT devices, as well as Ms. Logacheva's was especially suspect. I sought my GOIT devices in late January of 2020. ECF 164, at 49, wherein Defendants responded to a discovery request to inspect my GOIT devices 20 days after it was made. Defendants began raising allegations of fabrication in November 2019. ECF 149, Exhibit 21, at 1. Defendants began destroying GOIT devices, shortly before and continued thereafter. ECF 149, Exhibit 1, at 164:21 – 24. Id, at 172 – 176. My GOIT laptop was not located until September 2020. Id, at 162:2 – 7. Interestingly, Defendants had preserved my GOIT laptop for an extended period. Id, at 178:2 – 10. In fact, when Defendants wanted to inspect my personal devices, they had used my GOIT Laptop and the information contained within, as the reason for inspecting my personal devices. ECF 201, at 10:4 – 13. ECF 66. Its important to note that the files I was unsuccessfully attempting to backup, were files that Mr. Bartley had shared on August 3, 2018. ECF 201:3 – 10. It was these emails that I downloaded to my GOIT issued laptop and tried to backup before returning my GOIT issued laptop for preservation. ECF 66 – 7.

In addition to failing to preserve GOIT devices, Defendants had willfully given false testimony about the preservation efforts of GOIT Google Drives for thirteen individuals, as enumerated in ECF 150, at 9 – 12 (Exhibits mentioned therein are found in ECF 149) and ECF 164 at 5 – 7 (Exhibits mentioned therein are also in ECF 164; beginning on page 12). Before litigation started in this case, Defendants' employees were instructed to save documents relevant to the litigation in their GOIT Google Drives. ECF 149, Exhibit 16, at 90:24 to 91:25 Defendants claimed to have preserved GOIT Google Drives belonging to thirteen individuals. ECF 149, Exhibit 1, 105 – 106. Yet, all of it was a complete fiction, as determined by Defendants' own admissions and expert analysis of Defendants' Google Vault Audit Logs for the "Kenno 6-15-2018" Google Vault Matter. ECF 153, at 7 ¶ 3 – 4, wherein Defendants acknowledge the false testimonies given by Mr. Santos and Mr. John Bartley regarding GOIT Google Drives. Exhibit 45, at 2 ¶¶ 9(b), expert affidavit.

If one device was not preserved (or shredded), between plaintiffs and defendants, that's no biggie. Two devices, a bit on the nose. Three, well. Four (my GOIT Laptop and Desktop; Ms. Logacheva's Laptop and Desktop), Canada! Plus, two other devices for a total of six devices: a laptop and a desktop by one Mr. William Florence. ECF 164, at 99. Anarchy! Mr. Florence had called me a "dumb nigger" on July 9, 2018, the day before I was segregated and effectively terminated. ECF 172, at 3 – 4, "dumb nigger." ECF 150 at 16 and ECF 149, Exhibit 27, segregation.

And then, add GOIT Google Drives belonging to thirteen individuals, plus willful perjury. It was incredulous that Defendants claimed "… GOIT employees save relevant documents to *Google Drive*; employees do not save work-related documents and files directly to laptops or desktops as this is not good practice: computers can be broken, damaged, or stolen, resulting in lost data if such data is not saved or retained in a secure, cloud-based server. In addition, GOIT is a public agency of limited resources funded by taxpayers." ECF 164, at 95. As a public agency with limited resources, Defendants destroyed six devices (shredded a few) and failed to preserve GOIT Google Drives of thirteen individuals. However, Defendants preserved devices especially in cases where they wanted to use them against their employees. ECF 164, at 155 – 156, the Colorado State Personnel Board case No. 2013B76(C), Mourad Ksouri vs Governor's Office of Information Technology. Defendants' willful destruction of evidence is clear evidence of bad faith. Therefore, I respectfully request that this court to draw an adverse inference on the same.

Please note, Defendant's failure to preserve GOIT Google Drives did not become apparent until June 2021, when the district court order that Google Vault Audit Logs should be disclosed. I got the Audit Logs that Defendants withheld a few weeks before the district court dismissed my case so, I could not have timely filed a motion for spoilation.

**h.     Seventh Issue:** Without any evidence that supported I had created the fraudulent domain, the district court erred in determining that I did.

### Argument and Authorities:

As it related to the fraudulent domain, the district court used attorney-client privileged communication against me. I did not waive any privilege. The court accepted Google's affidavit about the fraudulent domain being fraudulent. However, the court rejected Google's affidavit, titled "CERTIFICATE OF AUTHENTICITY," about who actually created the fraudulent domain. ECF 149, Exhibit 5. The district court's conflicting analysis as it pertains to the evidence related to the fraudulent domain is an abuse of discretion.

**i.     Eighth Issue:** The court's rejection of the CCRD Recording is an abuse of discretion.

### Argument and Authorities:

Among the newly discovered evidence presented in my rule 59 motion before the district court, the court found "[t]he one exception is the phone … audio recording of [plaintiff] and Megan Bench ("CCRD Recording") [, which] create[s] the need for reconsideration… [if the CCRD recording] absolves Plaintiff of any wrongdoing regarding [i] the HSA emails, [ii] the audio recording with Mr. S[t]ierwalt, and [iii] the creation of the fraudulent domain and recovery emails." ECF 168, footnote at 8. The aforementioned citation from ECF 168 granted my motion

for leave to present the CCRD recording for rule 59. ECF 167. Then, I filed ECF 187, in which I satified every requirement the court had set in regard to the CCRD Recording. Yet, the court denied my motion again. ECF 190. The court's denial is an abuse of discretion. I respectfully ask this court to review ECF 187.

Please note, the Exhibits for ECF 187 are in ECF 188 but don't have labels. The table below will help.

| ECF 187's Exhibit 1 | ECF 188, at 1 |
|---|---|
| ECF 187's Exhibit 2 | ECF 188, at 2 - 52 |
| ECF 187's Exhibit 3 | ECF 188, at 53 |
| ECF 187's Exhibit 4 | ECF 188, at 54 - 56 |
| ECF 187's Exhibit 5 | ECF 188, at 57 - 61 |
| ECF 187's Exhibit 6 | ECF 188, at 62 |
| ECF 187's Exhibit 7 | ECF 188, at 63 |
| ECF 187's Exhibit 8 | ECF 188, at 64 - 81 |
| ECF 187's Exhibit 9 | ECF 188, at 82 - 84 |
| ECF 187's Exhibit 10 | ECF 188, at 85 - 94 |
| ECF 187's Exhibit 11 | ECF 188, at 95 - 99 |
| ECF 187's Exhibit 12 | ECF 188, at 100 - 176 |
| ECF 187's Exhibit 13 | ECF 188, at 177 - 178 |
| ECF 187's Exhibit 14 | ECF 188, at 179 - 204 |
| ECF 187's Exhibit 15 | ECF 188, at 205 - 207 |
| ECF 187's Exhibit 16 | ECF 188, at 208 - 218 |
| ECF 187's Exhibit 17 | ECF 188, at 219 - 222 |

**Ninth Issue:** The sanctions applied by the court are punitive and unconstitutional.

**Argument and Authorities:**

I respectfully ask the court to see the arguments presented in ECF 172 and ECF 174

**4.  Do you think the district court applied the wrong law?**
Yes.

 **If so, what law do you want applied?**
This is addressed in the first issue regarding my rule 59 motion. Specifically, the lack of application for the proper standard of review for rule 59(a) motions. Furthermore, Defendants 30(b)(6), which was conducted pursuant to the Colorado Rules of Civil Procedure, should bind Defendants to the "Kenno 6-15-2018" Google Vault Matter.

**5.  Did the district court incorrectly decide the facts?**
Yes.
**If so, what facts?**
Facts pertaining to Defendants' practice of automatically deleting of emails.

**6.  Did the district court fail to consider important grounds for relief?**
Yes

**If so, what grounds?**
Mr. Santos falsified evidence in Defendants Google Vault, just one day after a fraudulent domain was created. The district court did not address this at all.
Defendants committed perjury repeatedly. The district court did not address this at all.
Instead, the court blamed me for not uncovering Defendants false testimonies without the Google Vault Audit Logs.

**7.  Do you feel that there are any other reasons why the district court's judgment was wrong?**
Yes

**If so, what?**
Defendants destroyed 172,000 emails, six devices (shredded some of them), 13 Google Drives. Somehow, the district court used a rule 37 sanctions against me.

**8.  What action do you want this court to take in your case?**

I respectfully ask this court to: reverse and vacate the district court's decision.
I respectfully ask this court to: order a new trial and the disclosure of all Google Vault Audit Logs from Defendants' Google Vault.
I respectfully ask this court to: allow my expert to forensically examine Defendants' Google Vault.

I respectfully ask this court to: order Defendants into signing a release so that Google can disclose information about the fraudulent domain and Defendants' contract for Google services. It's a tragic list of what an appeals court should not have to consider but in this case, its necessary.

**9.   Do you think the court should hear oral argument in this case?**
Yes.

**If so, why?**
Defendants Google Vault Audits Logs and forensic examination of Defendants' Google Vault are relevant to the issues in this case. The Audit Logs should be disclosed in their entirety and forensic examination should be allowed.

<u>February 25, 2022</u>
Date                          Signature

## CERTIFICATE OF SERVICE

I hereby certify that on <u>Friday, February 25, 2022</u> I sent a copy of the Appellant/Petitioner's Opening Brief using e-mails. The email addresses of Defendants' counsels were: Jack Patten at jack.patten@coag.gov, Lauren Davison at lauren.davison@coag.gov, and Leslie Schulze at leslie.schulze@coag.gov.

<u>February 25, 2022</u>
Date

_____
Signature

---

## CERTIFICATE OF COMPLIANCE

I certify that the total number of pages I am submitting as my Appellant/Petitioner's Opening Brief is 30 pages or less or alternatively, if the total number of pages exceeds 30, I certify that I have counted the number of words and the total is <u>12017</u>, which is less than 13,000. I understand that if my Appellant/Petitioner's Opening Brief exceeds 13,000 words, my brief may be stricken and the appeal dismissed.

<u>February 25, 2022</u>
Date

_____
Signature